UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

ERNEST LENEAU,

                             Plaintiff,

                     -against-

THE CITY OF NEW YORK, CORRECTION  OFFICER
NATASHA CLEARY, Shield No. 11078, and
CORRECTION OFFICER MELISSA PAUL, Shield No.
3048,

                           Defendants.

16-CV-893 (RA)(BCM)

------------------------------------------------------------------------ x


## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR

## MOTION FOR SUMMARY JUDGMENT

ZACHARY W. CARTER
Corporation Counsel of the City of New York
*Attorney for Defendants City of New York,*
*Natasha Cleary, and Melissa Paul*
100 Church Street
New York, New York 10007
(212) 356-3520


Of Counsel:

Ariel Lichterman

## TABLE OF CONTENTS

                                                                                    **Page**

TABLE OF AUTHORITIES.................................................................................ii

PRELIMINARY STATEMENT ..........................................................................1

STATEMENT OF FACTS...................................................................................1

GOVERNING STANDARDS ..............................................................................1

ARGUMENT ......................................................................................................2

      POINT I......................................................................................................2

            PLAINTIFF'S CLAIMS SHOULD BE DISMISSED,
            AS HE FAILED TO EXHAUST
            ADMINISTRATIVE REMEDIES...................................................2

      POINT II.....................................................................................................5

            PLAINTIFF'S CLAIM FOR DELIBERATE
            INDIFFERENCE TO HIS MEDICAL NEEDS
            FAILS, AS HE CANNOT ESTABLISH THE
            ELEMENTS OF THE CLAIM. ......................................................5

      POINT III...................................................................................................12

            DEFENDANTS CLEARY AND PAUL ARE
            ENTITLED TO QUALIFIED IMMUNITY. ...................................12

      POINT IV ...................................................................................................14

            PLAINTIFF CANNOT ESTABLISH THE
            ELEMENTS OF HIS CLAIMS AGAINST THE
            CITY OF NEW YORK. ................................................................14

      POINT V ....................................................................................................16

            PLAINTIFF CANNOT ESTABLISH THE
             ELEMENTS OF HIS FIRST AMENDMENT
            CLAIM. ......................................................................................16

CONCLUSION ...................................................................................................17

## TABLE OF AUTHORITIES

**Cases**                                                                 **Pages**

Baez v. Parks,
    No. 02-CV-5821 (PKC) (DF), 2004 U.S. Dist. LEXIS 8182 (S.D.N.Y. May 11, 2004)...........4

Brown v. Wright,
    No. 04-CV-0462 (RWS), 2005 U.S. Dist. LEXIS 31239 (S.D.N.Y. Dec. 6, 2005).................11

Chance v. Armstrong,
    143 F.3d 698 (2d Cir. 1998) .................................................................................6

City of Los Angeles v. Heller,
    475 U.S. 796 (1986) ........................................................................................14

Daly v. New York City,
    No. 16-CV-6521 (PAE), 2017 U.S. Dist. LEXIS 82209 (S.D.N.Y. May 30, 2017)............7, 11

Davis v. Reilly,
    324 F. Supp. 2d 361 (E.D.N.Y. 2004) .................................................................4

Darnell v. Pineiro,
    849 F.3d. 17 (2d. Cir. 2017) .............................................................................7

Edmonds v. Cent. N.Y. Psychiatric Ctr.,
    No. 10-CV-5810 (DAB), 2011 U.S. Dist. LEXIS 95497 (S.D.N.Y. Aug. 25, 2011) ...........5, 8

George v. Morrison,
    No. 06 Civ. 3188 (SAS), 2007 U.S. Dist. LEXIS 42640 (S.D.N.Y. June 11, 2007)..............3-4

Giano v. Goord,
    250 F.3d 146 (2d Cir. 2001) .............................................................................2

Grullon v. City of New Haven,
    720 F.3d 133 (2d Cir. 2013) .............................................................................7

Harlow v. Fitzgerald,
    457 U.S. 800 (1982) ........................................................................................12

Hathaway v. Coughlin,
    99 F.3d 550 (2d Cir. 1996) ...............................................................................6

Higazy v. Templeton,
    505 F.3d 161 (2d Cir. 2007) .............................................................................2

**Cases**                                                                                  **Pages**

Hunter v. Bryant,
    502 U.S. 224 (1991). ..................................................................................... 12, 13

Jaramillo v. Weyerhaeuser Co.,
    536 F.3d 140 (2d Cir. 2008) ................................................................................. 2

Jeffreys v. City of New York,
    426 F.3d 549 (2d Cir. 2005) ................................................................................. 2

Johnson v. City of N.Y.,
    No. 12-CV-8265 (LAK), 2014 U.S. Dist. LEXIS 153118 (S.D.N.Y. Oct. 21, 2014)................ 6

Johnson v. Stevens,
    No. 12-CV-5186 (RRM), 2014 U.S. Dist. LEXIS 133164 (E.D.N.Y .Sep. 22, 2014)........... 3, 4

Jones v. Westchester Cnty. Dep't of Corr. Med. Dep't,
    557 F. Supp. 2d 408 (S.D.N.Y. 2008)) ................................................................. 15

Khanukayev v. City of New York,
    2012 U.S. Dist. LEXIS 113779 (S.D.N.Y. Aug. 13, 2012)...................................... 15

Kuck v. Danaher,
    600 F.3d 159, 168 (2d Cir. 2010) ...................................................................... 16

Lennon v. Miller,
    66 F.3d 416 (2d Cir. 1995) ......................................................................... 12, 13

Lewis v. Cavanugh,
    2017 U.S. App. LEXIS 5508 (2d. Cir. Mar. 30, 2017) .......................................... 6, 8

Lloyd v. City of N.Y.,
    No. 14-CV-9968 (GHW), 2017 U.S. Dist. LEXIS 49526 (S.D.N.Y. Mar. 31, 2017) 5, 7, 10, 11

Marcello v. Dep't. of Corr.,
    No. 07 Civ. 9665 (NRB), 2008 U.S. Dist. LEXIS 60895 (S.D.N.Y. July 30, 2008) ................ 3

Mercado v. City of New York,
    2011 U.S. Dist. LEXIS 140430 (S.D.N.Y. Dec. 5, 2011) ....................................... 15

Miner v. Clinton County, N.Y.,
    541 F.3d 464 (2d Cir. 2008) ................................................................................. 2

**Cases**                                                                                                    **Pages**

Mitchell v. Forsyth,
    472 U.S. 511, 526 (1985). ............................................................................... 12

Monell v. Dep't of Soc. Servs.,
    436 U.S. 658 (1978) ........................................................................................ 14

Newton v. City of New York,
    681 F. Supp. 2d 473 (S.D.N.Y. 2010) ............................................................. 2

O'Neill v. Town of Babylon,
    986 F.2d 646 (2d Cir. 1993) ........................................................................... 12

Patterson v. Westchester County,
    13-CV-0194 (PAC)(AJP), 2014 U.S. Dist. LEXIS 50763 (S.D.N.Y. Apr. 11, 2014) ....... 6, 7, 9

Patterson v. Westchester County,
    13-CV-0194 (PAC)(AJP), 2014 U.S. Dist. LEXIS 82437 (S.D.N.Y. June 16, 2014) ........... 6, 7

Pearson v. Callahan,
    555 U.S. 223 (2009) ..................................................................................... 12-13

Porter v. Nussle,
    534 U.S. 516 (2002) ...................................................................................... 2, 3

Prince v. Latunji,
    46 F. Supp. 2d 491 (S.D.N.Y. 2010) ................................................................. 3

Ricciuti v. New York City Transit Auth.,
    124 F.3d 123 (2d Cir. 1997) ........................................................................... 14

Rivera v. Anna M. Kross Center,
    No. 10 Civ. 8696 (RJH), 2012 U.S. Dist. LEXIS 15126 (S.D.N.Y. Feb. 7, 2012) ................... 4

Roe v. City of Waterbury,
    542 F.3d 31, 34 (2d Cir. 2008)) ........................................................................ 1

Salahuddin v. Goord,
    467 F.3d 263 (2d Cir. 2006) ........................................................................... 6

Saucier v. Katz,
    533 U.S. 194 (2001) ...................................................................................... 13

SCR Joint Venture L.P. v. Warshawsky,
    559 F.3d 133 (2d Cir. 2009) ................................................................................ 1

Smith v. Carpenter,
    316 F.3d 178 (2d Cir. 2003) ................................................................................ 6

Vargas v. City of N.Y.,
    No. 13-CV-3188 (SLT), 2017 U.S. Dist. LEXIS 49634 (E.D.N.Y. Mar. 30, 2017)) .. 5, 7, 8, 11

Vippolis v. Village of Haverstraw,
    768 F.2d 40 (2d Cir. 1985), cert. denied, 480 U.S. 916 (1987)................................ 14

Williams v. City of New York,
    No. 03 Civ. 5342 (RWS), 2005 U.S. Dist. LEXIS 26143 (S.D.N.Y. Nov. 4, 2005)............. 3, 4

Woodford v. Ngo,
    548 U.S. 81 (2006) ............................................................................................ 2, 3

## Statutes

42 U.S.C. § 1983 ....................................................................................................... 1

Fed. R. Civ. P. 56 ....................................................................................................... 1

Local Civil Rule 56.1 ................................................................................................. 1

42 U.S.C. § 1997e(a) .................................................................................................. 2

## PRELIMINARY STATEMENT

Plaintiff Ernest Leneau brings this action pursuant to 42 U.S.C. § 1983 alleging that while he was incarcerated at the Robert N. Davoren Center ("RNDC") on Riker's Island, he accidentally injured his head while alone in his cell, and that Defendant Correction Officers Natasha Cleary and Melissa Paul, as well as the City of New York ("Defendants"), delayed providing him with medical treatment and have since provided him with insufficient treatment. Defendants now move for summary judgment pursuant to Fed. R. Civ. P. 56 on the grounds that: 1) Plaintiff failed to exhaust his administrative remedies; 2) Plaintiff cannot establish the elements of his claim for deliberate indifference to his medical needs; 3) the Defendants are entitled to qualified immunity; 4) Plaintiff cannot establish the elements of his claims against the City of New York; and 5) Plaintiff cannot establish the elements of a First Amendment claim. For the reasons set forth herein, Defendants' motion should be granted in its entirety.

## STATEMENT OF FACTS

For a full statement of facts assumed to be undisputed for purposes of this motion, the Court is respectfully referred to Defendants' Statement Pursuant to Local Civil Rule 56.1 in Support of Defendants' Motion for Summary Judgment (hereinafter "Def. 56.1"), which is being submitted concurrently herewith.

## GOVERNING STANDARDS

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "'An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law.'" SCR Joint Venture L.P. v. Warshawsky, 559 F.3d 133, 137 (2d Cir. 2009) (quoting Roe v. City of Waterbury, 542 F.3d 31, 34 (2d Cir. 2008)). "[T]he burden of

demonstrating that no material fact exists lies with the moving party . . . ." Miner v. Clinton County, N.Y., 541 F.3d 464, 471 (2d Cir. 2008).

"[T]o defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact." Newton v. City of New York, 681 F. Supp. 2d 473, 484-485 (S.D.N.Y. 2010). "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence . . . on an essential element of the nonmovant's claim." Jaramillo v. Weyerhaeuser Co., 536 F.3d 140, 145 (2d Cir. 2008). To do so, the non-moving party must do more than show that there is "some metaphysical doubt as to the material facts," Higazy v. Templeton, 505 F.3d 161, 169 (2d Cir. 2007) (quotation omitted), and "may not rely on conclusory allegations or unsubstantiated speculation." Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005) (quotation omitted).

Defendants are entitled to summary judgment as a matter of law, as the undisputed factual record makes clear that Plaintiff cannot establish his claims.

## ARGUMENT

### POINT I

#### PLAINTIFF'S CLAIMS SHOULD BE DISMISSED, AS HE FAILED TO EXHAUST ADMINISTRATIVE REMEDIES.

Defendants are entitled to summary judgment on all of Plaintiff's claims, as he failed to exhaust his administrative remedies under the Prisoner Litigation Reform Act of 1996 ("PLRA"). It is well-settled that an incarcerated plaintiff must exhaust all available administrative remedies before pursuing any relief through a federal court action. 42 U.S.C. § 1997e(a); see Giano v. Goord, 250 F.3d 146, 150 (2d Cir. 2001); Woodford v. Ngo, 548 U.S. 81, 93 (2006); see also Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or

particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 532.

The New York City Department of Correction ("DOC") maintains a multi-step grievance procedure that requires inmates to file a grievance and then appeal any adverse determination to the Warden, the Central Office Review Committee, and then the Board of Correction. See, e.g., Williams v. City of New York, No. 03 Civ. 5342 (RWS), 2005 U.S. Dist. LEXIS 26143, at *27 (S.D.N.Y. Nov. 4, 2005); Johnson v. Stevens, No. 12-CV-5186 (RRM) (MDG), 2014 U.S. Dist. LEXIS 133164, at *5-7 (E.D.N.Y .Sep. 22, 2014) ("The New York City Department of Correction ("DOC") in fact employs a robust grievance procedure for receiving and evaluating inmate complaints."); Prince v. Latunji, 746 F. Supp. 2d 491, 495 (S.D.N.Y. 2010) ("The New York City Department of Correction's Inmate Grievance Resolution Program ("IGRP") consists of five levels of review for inmate grievances, all of which must be exhausted for a prisoner to meet the exhaustion requirement.").

Inmates are required to pursue relief through *all* stages of a prison grievance program and to comply with all of the program's procedural rules before seeking alternative relief. See Woodford, 548 U.S. at 94 (holding that the text and "general scheme" of the PLRA both require proper and complete exhaustion); Marcello v. Dep't. of Corr., No. 07 Civ. 9665 (NRB), 2008 U.S. Dist. LEXIS 60895, at *8 (S.D.N.Y. July 30, 2008) ("inmates are required to proceed through all five levels of the IGRP review process before their claims are considered 'exhausted'"). Even where an inmate does not receive a response to his initial grievance, courts have repeatedly held that a prisoner must pursue *all* levels of the administrative procedure in order to properly exhaust, and that "[s]trict compliance" with the procedure is required. See, e.g., George v. Morrison, No. 06 Civ. 3188 (SAS), 2007 U.S. Dist. LEXIS 42640, at *14-15

(S.D.N.Y. June 11, 2007) (citing cases); Williams v. City of New York, No. 03 Civ. 5342 (RWS), 2005 U.S. Dist. LEXIS 26143, at *28 (S.D.N.Y. Nov. 4, 2005) ("Even where an inmate files a grievance yet receives no response, the inmate must nevertheless exhaust his appeals to the facility superintendent, the Central Office Review Committee, and the Board of Corrections." (internal quotations omitted)).

Furthermore, it is well-settled that "[c]laims asserting 'deliberate indifference' concerning medical care are allegations that fall within the exhaustion requirement of the PLRA." Johnson v. Stevens, No. 12-CV-5186 (RRM) (MDG), 2014 U.S. Dist. LEXIS 133164, at *5-7 (E.D.N.Y .Sep. 22, 2014); see also Davis v. Reilly, 324 F. Supp. 2d 361, 365 (E.D.N.Y. 2004); Baez v. Parks, No. 02-CV-5821 (PKC) (DF), 2004 U.S. Dist. LEXIS 8182, at *16 (S.D.N.Y. May 11, 2004)).

Here, Plaintiff failed to exhaust his administrative remedies, as he did nothing more than file his grievance with DOC. Def. 56.1 at ¶¶ 23-24. Indeed, he concedes that he even filed his grievance late, and took no further steps to file an appeal or request a hearing. Id. DOC's grievance procedure outlines the additional steps that an inmate must follow in order to fully exhaust his administrative remedies, regardless of whether he receives a response to his initial grievance. See George v. Morrison, No. 06 Civ. 3188 (SAS), 2007 U.S. Dist. LEXIS 42640, at *11-14 (S.D.N.Y. June 11, 2007). For instance, an inmate must request a formal hearing if he has not received a response to his grievance within five days of filing the grievance. See Rivera v. Anna M. Kross Center, No. 10 Civ. 8696 (RJH), 2012 U.S. Dist. LEXIS 15126, at *14-15 (S.D.N.Y. Feb. 7, 2012). Plaintiff failed to do that here, and he has offered no excuse or justification for this failure. Defendants are therefore entitled to summary judgment on all of Plaintiff's claims due to Plaintiff's failure to exhaust his administrative remedies.

4

## POINT II

### PLAINTIFF'S CLAIM FOR DELIBERATE INDIFFERENCE TO HIS MEDICAL NEEDS FAILS, AS HE CANNOT ESTABLISH THE ELEMENTS OF THE CLAIM.

Although not clear from Plaintiff's Amended Complaint ("Compl."), he appears to be pursuing a claim for deliberate indifference to his medical needs based upon the Defendant Officers' alleged delay in providing him medical treatment after he hit his head on his bed on January 14, 2014.

To establish a claim for the deliberate indifference to medical needs under the Fourteenth Amendment,[1] a plaintiff must satisfy both an objective element and a subjective element of a two-prong test. See Lloyd v. City of N.Y., No. 14-CV-9968 (GHW), 2017 U.S. Dist. LEXIS 49526, at *25 (S.D.N.Y. Mar. 31, 2017). The objective element requires proof that the alleged deprivation of adequate medical care was "sufficiently serious." Id. (citations omitted). A medical condition is sufficiently serious if it is "a condition of urgency . . . that may produce death, degeneration, or extreme pain." Vargas v. City of N.Y., No. 13-CV-3188 (SLT), 2017 U.S. Dist. LEXIS 49634, at *32-33 (E.D.N.Y. Mar. 30, 2017) (quotation omitted).

Where, as here, a plaintiff is claiming a temporary delay in the provision of medical treatment, courts must focus on the risk of harm posed by the delay, in addition to the seriousness of the medical condition. See Edmonds v. Cent. N.Y. Psychiatric Ctr., No. 10-CV-5810 (DAB) (KNF), 2011 U.S. Dist. LEXIS 95497, at *13 (S.D.N.Y. Aug. 25, 2011). Factors to be considered in this analysis include the "existence of an injury that a reasonable doctor or

---

[1] A pretrial detainee's claim of deliberate indifference to medical needs is analyzed under the Fourteenth Amendment's Due Process Clause as opposed to the Cruel and Unusual Punishment Clause of the Eighth Amendment. See Lloyd v. City of N.Y., No. 14-CV-9968 (GHW), 2017 U.S. Dist. LEXIS 49526, at *25 (S.D.N.Y. Mar. 31, 2017).

patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; [] the existence of chronic and substantial pain, or the absence of adverse medical effects or demonstrable physical injury." Id. (quotations omitted, citing Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998); Smith v. Carpenter, 316 F.3d 178, 186 (2d Cir. 2003)). Such factors reflect "the actual medical consequences that flow from the alleged denial of care [and] will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." Patterson v. Westchester County, 13-CV-0194 (PAC)(AJP), 2014 U.S. Dist. LEXIS 50763, at *18-19 (S.D.N.Y. Apr. 11, 2014) (adopted at 2014 U.S. Dist. LEXIS 82437 (S.D.N.Y. June 16, 2014)).

Under this analysis, courts have only found that delays in medical treatment met this objective standard when they were extensive, and caused substantial pain or posed a substantial risk, such as a five-month delay in treatment of Hepatitis C, Salahuddin v. Goord, 467 F.3d 263, 281 (2d Cir. 2006), a six-month delay in dental treatment, which caused infection and severe pain, Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998), or a two-year delay in treatment of broken pins in a hip, which caused chronic severe pain. Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996). By contrast, courts have routinely found that injuries such as a swollen head, dizziness, nausea, double vision, temporary blindness, ankle fractures and sprains, and delays in diagnostic testing, do not have the requisite urgency and seriousness to meet this objective standard as a matter of law. Lewis v. Cavanugh, 2017 U.S. App. LEXIS 5508, at *3 (2d. Cir. Mar. 30, 2017); Johnson v. City of N.Y., No. 12-CV-8265 (LAK)(HBP), 2014 U.S. Dist. LEXIS 153118, at *18 (S.D.N.Y. Oct. 21, 2014); Patterson v. Westchester County, 13-CV-

0194 (PAC)(AJP), 2014 U.S. Dist. LEXIS 50763, at *18-19 (S.D.N.Y. Apr. 11, 2014) (adopted at 2014 U.S. Dist. LEXIS 82437 (S.D.N.Y. June 16, 2014)).

If a plaintiff can satisfy the objective element, he or she must also satisfy the subjective element, which requires a showing that the defendant officials were "subjectively reckless in their denial of medical care." Lloyd v. City of N.Y., No. 14-CV-9968 (GHW), 2017 U.S. Dist. LEXIS 49526, at *25 (S.D.N.Y. Mar. 31, 2017). Courts define "subjective recklessness" to require proof "that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." Darnell v. Pineiro, 849 F.3d. 17, 35 (2d. Cir. 2017). A plaintiff must show that the individual had a "*mens rea* greater than mere negligence." Id. Moreover, where the delay in treatment was not within the individual defendants' control, the subjective element cannot be met. See Vargas v. City of N.Y., No. 13-CV-3188 (SLT), 2017 U.S. Dist. LEXIS 49634, at *37 (E.D.N.Y. Mar. 30, 2017) (finding plaintiff unable to meet the subjective element where the delay was the result of staff shortages).

As an initial matter, Plaintiff cannot establish the personal involvement of Officer Melissa Paul in the alleged delay or denial of treatment. "The Second Circuit has long required plaintiffs to show a defendant's personal involvement in the alleged constitutional deprivation to successfully bring a § 1983 claim against him." Daly v. New York City, No. 16-CV-6521 (PAE), 2017 U.S. Dist. LEXIS 82209, at *10-11 (S.D.N.Y. May 30, 2017) (citing Grullon v. City of New Haven, 720 F.3d 133, 138 (2d Cir. 2013)). Plaintiff concedes that he first informed Officer Paul about the incident two days later, on January 16, 2015, and that in response, he immediately received medical attention. Def. 56.1 at ¶¶ 12-14. Thus, any claim against her for delaying or

denying him medical treatment should be dismissed, as she had no personal involvement in any delay or denial and, in fact, was actually responsible for getting Plaintiff medical treatment.

**A.      Plaintiff Cannot Establish That He Had An Objectively Serious Medical Condition.**

Plaintiff cannot establish the objective prong of this claim as he cannot show that he suffered from a sufficiently serious condition. Plaintiff's own testimony makes clear that he suffered, at most, a minor condition, not one of "urgency . . . that may produce death, degeneration, or extreme pain." Vargas v. City of N.Y., No. 13-CV-3188 (SLT), 2017 U.S. Dist. LEXIS 49634, at *32-33 (E.D.N.Y. Mar. 30, 2017) (quotation omitted). Indeed, when Plaintiff bumped his head, the only symptom he experienced was momentary dizziness from the initial shock of the bump. Def. 56.1 at ¶ 5. And he did not even ask Officer Cleary for medical attention, but instead went back to sleep. Def. 56.1 at ¶¶ 5-7, 9, 11. There was so little urgency to this condition, in fact, that he did not request *any* medical attention for two whole days. Def. 56.1 at ¶ 12.

That Plaintiff did not have a serious condition is further confirmed by the fact that he had mild or no pain, Def. 56.1 at ¶¶ 5, 11, 15, and the fact that when he did receive medical treatment, the only identifiable injury he had was a contusion to his head, for which he was given ice and Tylenol. Def. 56.1 at ¶¶ 15; see Edmonds v. Cent. N.Y. Psychiatric Ctr., No. 10-CV-5810 (DAB) (KNF), 2011 U.S. Dist. LEXIS 95497, at *13 (S.D.N.Y. Aug. 25, 2011). Plaintiff's momentary dizziness and contusion simply do not meet the threshold for a serious condition. See Lewis v. Cavanugh, 2017 U.S. App. LEXIS 5508, at *3 (2d. Cir. Mar. 30, 2017) (finding swelling to the head, bruising, abrasions, dizziness, and double vision insufficiently serious to meet the objective element). Moreover, Plaintiff's daily activities were not significantly affected by his condition. See Edmonds, 2011 U.S. Dist. LEXIS 95497, at *13. In fact, after the incident,

Plaintiff was in good enough condition to take on numerous jobs in his housing facility, including taking out the garbage, sweeping, cleaning, serving food, and working seven-hour shifts of a suicide prevention watch. Def. 56.1 at ¶ 17.

        To the extent Plaintiff is arguing that he had a serious condition based upon the pain and injuries that he claims surfaced months after the incident, this is similarly insufficient to show that his condition *at the time of the incident* was serious and urgent.[2] Indeed, Plaintiff's condition had actually improved shortly after the incident. Def. 56.1 at ¶¶ 15-17. He experienced mild or no pain and no dizziness when he was evaluated in the clinic on January 16, 2015, and by January 23, 2015, the swelling in his head had reduced and he was asymptomatic. Id. By Plaintiff's own admission, no additional problems even surfaced for numerous months after the incident. Def. 56.1 at ¶ 18. This makes clear that his condition at the time of the incident was simply not an urgent one that required immediate medical attention. Had Plaintiff received the treatment he *now* claims he needed immediately after the incident, there is no reason to think any further injuries would have even been detected, for he was experiencing no additional symptoms at that time. See Def. 56.1 at ¶¶ 5-7, 11-12. Thus, Plaintiff cannot show that any symptoms that only began months after the incident were "actual medical consequences that flow from the alleged denial of care." Patterson v. Westchester County, 13-CV-0194 (PAC)(AJP), 2014 U.S. Dist. LEXIS 50763, at *18-19 (S.D.N.Y. Apr. 11, 2014). Plaintiff cannot therefore establish the objective prong of his claim for deliberate indifference to his medical needs, as he did not suffer from a sufficiently serious condition.

---

[2] Additionally, even though Plaintiff argues that his neck, back, knee, and vision problems were the result of this incident, there is no evidence to suggest that there is any causal link between this incident and those problems, let alone that they were the result of the two-day delay in his treatment.

**B.      Plaintiff Cannot Establish That the Defendants Recklessly Delayed or Denied Him Medical Care.**

Similarly, Plaintiff cannot establish the subjective prong of this claim, as he cannot show that Officers Cleary and Paul were reckless in their delay in the provision of medical care. As argued *supra*, Plaintiff concedes that Officer Paul took no part in the delay in his treatment, and in fact ensured that he *was* provided with medical treatment. Def. 56.1 at ¶¶ 10, 12-14. He certainly cannot establish the subjective element as to her.

Neither can he establish this element as to Officer Cleary, however, because he cannot show that Officer Cleary "knew, or should have known," that her conduct posed an "excessive risk" to Plaintiff's health or safety. Lloyd v. City of N.Y., No. 14-CV-9968 (GHW), 2017 U.S. Dist. LEXIS 49526, at *29 (S.D.N.Y. Mar. 31, 2017). The only conduct alleged against Officer Cleary is that she informed him that if he wanted to go to the clinic for a sick visit, he would have to wait until the lockdown was over. Def. 56.1 at ¶¶ 9; Compl. But Plaintiff never even asked her for medical attention, and never even told her that he felt dizzy or had any other symptom which would require medical attention. Def. 56.1 at ¶ 5-7. That is because Plaintiff himself felt it was "nothing." Def. 56.1 at ¶ 5. Otherwise, he would have repeatedly requested medical treatment and would have described the reasons why he needed it. And surely if he was suffering from a serious condition, he would not have been able to fall back to sleep, as he did. Def. 56.1 at ¶ 11. Thus, even Plaintiff had no reason to know that not seeking medical treatment at that time posed *any* risk to his health or safety, let alone an *excessive* risk. Certainly, then, Officer Cleary could not, and should not, have known that delaying his treatment posed *any* risk, let alone an *excessive* risk, to his health.

Moreover, by Plaintiff's own admission, any delay in providing him with medical treatment was the result both of him not requesting medical attention and the facility-wide

10

lockdown, rather than any intentional or reckless conduct on the part of Officer Cleary. Def. 56.1 at ¶ 6-9, 11. Thus, Plaintiff cannot establish that Officer Cleary intentionally or recklessly delayed providing him with medical treatment. See Vargas v. City of N.Y., No. 13-CV-3188 (SLT), 2017 U.S. Dist. LEXIS 49634, at *37 (E.D.N.Y. Mar. 30, 2017) (subjective element not met where the delay was the result of unintentional staff shortages).

**C.      Plaintiff Cannot Establish That He Was Provided Inadequate Treatment.**

To the extent Plaintiff purports to base this claim on what he believes to be inadequate medical treatment, Defendants are still entitled to summary judgment. First, the individual Defendant officers had no personal involvement in the actual treatment Plaintiff was provided with. See Daly v. New York City, No. 16-CV-6521 (PAE), 2017 U.S. Dist. LEXIS 82209, at *10-11 (S.D.N.Y. May 30, 2017). Second, Plaintiff's "mere disagreement over the proper course of treatment does not create a constitutional claim." Brown v. Wright, No. 04-CV-0462 (RWS), 2005 U.S. Dist. LEXIS 31239, at *13-14 (S.D.N.Y. Dec. 6, 2005). Rather, this claim sounds in negligence, even if he could establish medical malpractice, but does not constitute a constitutional claim. See Lloyd v. City of N.Y., No. 14-CV-9968 (GHW), 2017 U.S. Dist. LEXIS 49526, at *34 (S.D.N.Y. Mar. 31, 2017). And finally, even by Plaintiff's own admission, he received extensive medical care while he has been incarcerated, including regular treatment not only in the medical clinic, but with numerous different specialists. Def. 56.1 at ¶¶ 19-21.[3] Plaintiff cannot therefore maintain his deliberate indifference claim based upon a theory of inadequate medical treatment. See Brown v. Wright, No. 04-CV-0462 (RWS), 2005 U.S. Dist. LEXIS 31239, at *13-14 (S.D.N.Y. Dec. 6, 2005).

---

[3] Plaintiff is also responsible for any inadequacy in the treatment provided to him, as he has voluntarily decided not to follow the professional advice provided by some of the medical specialists he has treated with. Def. 56.1 ¶¶ 20-21.

Defendants are therefore entitled to summary judgment on Plaintiff's claim for deliberate indifference to his medical needs.

## POINT III

### DEFENDANTS CLEARY AND PAUL ARE ENTITLED TO QUALIFIED IMMUNITY.

Although Defendants Natasha Cleary and Melissa Paul are entitled to summary judgment based upon the foregoing arguments, in the alternative, they are entitled to summary judgment on the basis of qualified immunity. The doctrine of qualified immunity shields government officials from civil liability if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is not merely a defense but rather "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Accordingly, the availability of qualified immunity should be decided by a court "at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991).

An officer is entitled to qualified immunity if it was objectively reasonable for the officer to believe his or her conduct was lawful, i.e. if officers of reasonable competence could disagree. See O'Neill v. Town of Babylon, 986 F.2d 646, 649-50 (2d Cir. 1993) (citation omitted). An officer's belief that his or her conduct was lawful is only objectively unreasonable, and thus not worthy of qualified immunity, when "no officer of reasonable competence could have made the same choice in similar circumstances." Lennon v. Miller, 66 F.3d 416, 420-21, 424 (2d Cir. 1995).

"Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v.

Callahan, 555 U.S. 223, 231 (2009). The primary "concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular . . . conduct." Saucier v. Katz, 533 U.S. 194, 205 (2001). In short, "[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Hunter v. Bryant, 502 U.S. 224, 229 (1991) (quoting Malley v. Briggs, 475 U.S. 335, 341, 343 (1986).

   The facts and circumstances presented here simply cannot support a conclusion that the delay in providing medical treatment to Plaintiff was "so flawed that no reasonable officer would have made a similar choice." Lennon, 66 F.3d at 425. Here, Plaintiff never asked Officer Cleary for medical attention and never described any pain or other symptoms he felt to her. Def. 56.1 at ¶¶ 5-9. Plaintiff, in fact, had no symptoms other than momentary dizziness, which did not even prevent him from falling asleep. Def. 56.1 at ¶¶ 5, 11. Plaintiff himself felt it was not an urgent medical need and thus did not even request medical attention for two days. Def. 56.1 at ¶¶ 5-7, 9, 11-12. And when he did receive treatment two days later, he was experiencing no dizziness and mild or no pain, and was only diagnosed with a contusion, treated with Tylenol and ice. Def. 56.1 at ¶ 15. Where Plaintiff himself did not even think his situation was serious and urgent, he cannot fairly argue that no reasonable officer could have similarly thought his condition was neither serious nor urgent.

   And the only action Plaintiff alleges that Officer Paul took was actually to ensure that Plaintiff did receive medical attention. Def. 56.1 at ¶¶ 12-14. This was unquestionably objectively reasonable, as this is precisely what Plaintiff argues should have happened. Defendants Cleary and Paul are therefore entitled to qualified immunity.

POINT IV

**PLAINTIFF CANNOT ESTABLISH THE ELEMENTS OF HIS CLAIMS AGAINST THE CITY OF NEW YORK.**

Plaintiff arguably pleads a claim for municipal liability against the City of New York, but he cannot establish any of the elements of the claim. Plaintiff has conducted no Monell discovery, and as a result cannot point to any evidence to support a finding of municipal liability. To establish a claim against a municipality under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978), a plaintiff must show that a violation of his rights resulted from a municipal custom or policy, see Ricciuti v. New York City Transit Auth., 941 F.2d 119, 122 (2d Cir. 1991), and that there was a causal link between the alleged violation and such policy or custom. Vippolis v. Village of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985), cert. denied, 480 U.S. 916 (1987). As a preliminary matter, because a plaintiff who fails to establish an underlying violation of his constitutional rights has no basis for a claim of municipal liability, City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986), Plaintiff's inability to establish his deliberate indifference claim, as set forth above, is fatal to his Monell claim.

Even assuming, *arguendo*, that Plaintiff could establish – or at least raise an issue of material fact sufficient to maintain – a claim for a violation of his constitutional rights, Plaintiff cannot prove the existence of a municipal custom or policy that caused any alleged constitutional violation. To satisfy the "municipal custom or policy" prong of a Monell claim, a plaintiff must prove one of the following: "(1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a 'custom or usage' and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to

14

properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact." Khanukayev v. City of New York, No. 09 Civ. 6175 (CM) (GWG), 2012 U.S. Dist. LEXIS 113779, at *9 (S.D.N.Y. Aug. 13, 2012) (quoting Jones v. Westchester Cnty. Dep't of Corr. Med. Dep't, 557 F. Supp. 2d 408, 417 (S.D.N.Y. 2008)). Furthermore, "[t]o establish Monell liability, the causal link [between the alleged policy and the constitutional violation] must be strong; that is, the policy must be the 'moving force' behind a constitutional violation." Mercado v. City of New York, No. 08 Civ. 2855 (BSJ) (HP), 2011 U.S. Dist. LEXIS 140430, at *23 (S.D.N.Y. Dec. 5, 2011) (quoting Monell, 436 U.S. at 691, 694).

  Here, Plaintiff has failed even to *plead* the existence of a City policy or practice with any sufficiency, let alone to provide any factual evidence to support it. Plaintiff's Amended Complaint merely states that his alleged injuries were the result of "the negligent-careless, reckless and the intentional misconduct of the City of New York," and the City's "failing to adequately supervise and instruct" its employees. Pl. Amend. Compl. at p. 3. Such a paucity of specificity fails even to meet Plaintiff's pleading burden. Thus it certainly fails to meet Plaintiff's burden on summary judgment. Indeed, there is not a modicum of evidence that would support a finding that a municipal policy or custom, of any of the four types identified above, even exists, let alone was the "moving force" behind any claimed constitutional violation. Nor has Plaintiff even identified what the alleged custom or policy is. The City should therefore be granted summary judgment on Plaintiff's municipal liability claim.

## POINT V

## PLAINTIFF CANNOT ESTABLISH THE ELEMENTS OF HIS FIRST AMENDMENT CLAIM.

Plaintiff arguably pleads a First Amendment claim, but he has alleged no facts, and adduced no evidence, to support this claim. Indeed, Plaintiff's Amended Complaint does not even specify what actions the Defendants took that violated his First Amendment rights. See generally Compl. Nor has he adduced any evidence to show that his First Amendment rights were violated in any way. See, e.g., Kuck v. Danaher, 600 F.3d 159, 168 (2d Cir. 2010) (holding that a First Amendment retaliation claim requires a showing that a plaintiff has an interest protected by the First Amendment, that defendants' actions were motivated by his exercise of that right, and that their actions chilled his exercise of that right). Defendants are therefore entitled to summary judgment on Plaintiff's First Amendment claim.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court grant their motion for summary judgment dismissing Plaintiff's complaint in its entirety, together with such costs, fees and other and further relief as the Court deems just and proper.

Dated:      New York, New York
            July 21, 2017

                                ZACHARY W. CARTER
                                Corporation Counsel of the City of New York
                                *Attorney for Defendants City, Cleary and Paul*
                                100 Church Street
                                New York, NY 10007
                                (212) 356-3520

                        By:     _____

                                Ariel Lichterman
                                Assistant Corporation Counsel
                                Special Federal Litigation Division


TO:      (Via First Class Mail)
         Ernest Leneau
         *Pro Se Plaintiff*
         Inmate # 141-141-3352
         Otis Bantum Correctional Center
         1600 Hazen Street
         East Elmhurst, NY 11370

17