UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ERNEST LENEAU,

          Plaintiff,

v.

THE CITY OF NEW YORK, CORRECTION
OFFICER NATASHA CLEARY and
CORRECTION OFFICER MELISSA PAUL,

          Defendants.

No. 16-CV-0893 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

Plaintiff Ernest Leneau, proceeding *pro se*, brings this 42 U.S.C. § 1983 action alleging that he was deprived medical care while a detainee at the Robert N. Davoren Center ("RNDC") at the Rikers Island Correctional Facility. Defendants the City of New York and Correction Officers Natasha Cleary and Melissa Paul now move for summary judgment. For the reasons that follow, Defendants' motion is granted.

## FACTUAL BACKGROUND

The following facts, construed in the light most favorable to Plaintiff, are undisputed unless otherwise noted. *See, e.g., Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011).[1]

On January 14, 2015, Plaintiff was incarcerated at the Robert N. Davoren Center at Rikers Island Correctional Facility. Def. 56.1 ¶ 1. Plaintiff claims that at some point that evening he was "startled awake by a corrections officer banging on his ell [sic] door and that this alarmed him so

---

[1] These facts are drawn from the parties' submissions in connection with Defendants' motion for summary judgment, including Defendants' Rule 56.1 Statement ("Def. 56.1"). Where facts stated in a party's Rule 56.1 statement are supported by testimonial or documentary evidence, and denied only by way of a conclusory statement by the other party without citation to conflicting testimonial or documentary evidence, the Court finds such facts to be true. *See* S.D.N.Y. Local Rule 56.1(c)-(d).

much that he jumped up out of his sleep baaging [*sic*] his head on his bed railing." Am. Compl. ¶ 3(B), ECF No. 8. The parties dispute what transpired next. Plaintiff asserts in the Amended Complaint that "he immediately requested for medical assistance from the corrections officer on duty but was totally ignored." *Id.* In his opposition papers he elaborates that he was he was "mad[e]" to stay in his cell for two days after striking his head. Pl. Opp. 4, ECF No. 50. Defendants, on the other hand, claim that Plaintiff did not request medical attention on the day of the incident in question. Def. 56.1 ¶¶ 7-9.

Two days later—on January 16—Plaintiff informed Defendant Paul that he had struck his head. *Id.* ¶ 12. Paul completed an Injury to Inmate Report, documenting the injury, after which Plaintiff was seen at the jail's clinic. *Id.* ¶¶ 14-15. Plaintiff was diagnosed with a contusion on his forehead and provided ice and Tylenol. *Id.* ¶ 15. On January 23, Plaintiff returned to the clinic for a follow-up appointment. *Id.* ¶ 16. He reported that the swelling was decreasing and that he was experiencing no other symptoms. *Id.* Months after the incident, Plaintiff began experiencing pain in his neck, back, and knees, as well as blurred vision. *Id.* ¶ 18. Plaintiff received treatment at the medical clinic for these issues and was referred to numerous specialists for additional treatment. *Id.* ¶ 19.

## PROCEDURAL HISTORY

On July 29, 2015, Plaintiff submitted a complaint through the Inmate Grievance and Request Program administered by the City of New York Department of Corrections. Def. 56.1 ¶ 23; Compl. 13, ECF No. 2.[2] On February 2, 2016, he filed a Complaint commencing this action,

---

[2] Attached to Plaintiff's initial Complaint—not the operative Amended Complaint—are two separate grievance forms, one of which indicates that it was submitted on January 16, 2015. *See* Compl. 7, ECF No. 2. Any contention that Plaintiff's grievance was filed on January 16, however, contradicts both his own deposition testimony, *see* Lichterman Decl. Ex. A. 108:2-5, ECF No. 46 ("I filed the grievance and I filed a claim but it was late"), and Defendants' Rule 56.1 statement, *see* Def. 56.1 ¶ 23. In light of Plaintiff's testimony, together with his failure to file a responsive 56.1 statement, the Court concludes that

2

alleging a violation of 42 U.S.C. § 1983. Compl., ECF No. 2. On April 15, 2016, Plaintiff filed an Amended Complaint. Am. Compl., ECF No. 8. After the parties engaged in settlement discussions and completed discovery, Defendants filed the instant motion for summary judgment. Mot. for Summ. J., ECF No. 44.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 authorizes a court to grant summary judgment to a moving party if the movant establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d. Cir. 2008). A fact is "material" if it "might affect the outcome of the suit under the governing law," and it is "genuinely in dispute" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citations and internal quotation marks omitted). In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod*, 653 F.3d at 164 (citation and internal quotation marks omitted). The moving party has the initial burden of demonstrating that no genuine issue of material fact exists. *Id.* If the moving party satisfies this burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact" to survive summary judgment. *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). Furthermore, "it is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants, particularly where motions for summary judgment are concerned." *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016) (per curiam) (alteration, citation, and quotation marks omitted).

---

Plaintiff's grievance was submitted on July 29, 2015, not January 16, 2015. *See T.Y.*, 584 F.3d at 418. Plaintiff does not assert otherwise in his opposition papers.

3

## DISCUSSION

### I. Plaintiff Failed to Exhaust Administrative Remedies.

The purpose of the Prison Litigation Reform Act ("PLRA") is "to reduce the quantity and improve the quality of prisoner suits . . . [and to provide] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004). To that end, 42 U.S.C. § 1997e(a), as amended by the PLRA, provides that a prisoner must exhaust administrative remedies before bringing suit in federal court:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The exhaustion requirement applies to all personal incidents while in prison, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), including actions seeking monetary damages even though such damages are not available as an administrative remedy, *Booth v. Churner*, 532 U.S. 731, 741 (2001). The PLRA requires both proper and complete exhaustion in accordance with the prison's administrative procedures. *See Woodford v. Ngo*, 548 U.S. 81, 85, 94 (2006). Indeed, inmates are required to pursue relief through all stages of a prison grievance program and to comply with all of the program's procedural rules before seeking alternative relief. *See id.* at 102.

Failure to exhaust administrative remedies is an affirmative defense under the PLRA rather than a pleading requirement. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Plaintiff was thus under no obligation to affirmatively plead or demonstrate administrative exhaustion in the Amended Complaint. *See id.* Rather, the burden is on Defendants to demonstrate that the administrative remedies were available and that Plaintiff did not exhaust them. *See Hubbs v. Suffolk Cty.*

4

*Sherriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015). If such a showing is made, Plaintiff can then only bring suit in federal court if he demonstrates that one of the exceptions to exhaustion applies. *See Ross v. Blake*, 136 S. Ct. 1850, 1852 (2016).

### A. Defendants Have Demonstrated That a Grievance Process Exists for Resolving the Underlying Dispute.

Defendants have met their "initial burden of establishing, by pointing to legally sufficient sources such as statutes, regulations, or grievance procedures that a grievance process exists and applies to the underlying dispute." *Hubbs*, 788 F.3d at 59 (citation and internal quotation marks omitted). Pursuant to Directive 3376, the New York City Department of Corrections maintains a robust administrative grievance procedure—the Inmate Grievance and Request Program—for inmates at all of its facilities.[3] The IGRP mandates that an inmate must first file a grievance. IGRP § IV(D)(1). If the grievance possesses merit, IGRP staff propose an informal resolution to the inmate. *Id.* § IV(G)(5). If the inmate is not satisfied with the staff's resolution of the grievance, he may request a formal hearing before the Inmate Grievance Resolution Committee. *Id.* § IV(G)(5)(b). Following the hearing, the inmate can then appeal to the commanding officer. *Id.* § IV(I). Finally, if dissatisfied with the decision of the commanding officer, the inmate may submit an appeal to the Central Office Review Committee, with the "review and advice" of the New York City Board of Correction. *Id.* § (IV)(J).

There appears to be no dispute that the IGRP was available to resolve the underlying dispute here. The IGRP applies to "[a]ny inmate who is directly and personally affected by any

---

[3] Consistent with common practice in this District, the Court takes judicial notice of the version of the IGRP in effect at the time of the events giving rise to Plaintiff's claim, *see, e.g., Seabrook v. City of New York*, No.13-CV-6620 (JPO), 2014 WL 7176052 at *3 n.4 (S.D.N.Y. Dec. 16, 2014), which is available on DOC's website, *see* N.Y.C. Dep't of Correction, Directive 3376 (effective Sept. 10, 2012), available at http://www.nyc.gov/html/doc/downloads/pdf/Directive_3376_Inmate_Grievance_Request_Program.pdf, as amended by Revision Directive 3376 (effective March 19, 2014), available at http://www.nyc.gov/html/doc/downloads/pdf/Directive_3376_rev.pdf.

5

issue, condition, practice, or action relating to the inmate's confinement." IGRP ¶ II(A). Although the IGRP does not apply to claims against "medical personnel," claims relating to access to medical care filed against corrections officers do fall within its purview. *See id.* § V(A), (B).

### B. Plaintiff Did Not Properly and Completely Exhaust the Procedures Provided in the IGRP.

Plaintiff failed to properly and completely exhaust the administrative remedies provided in the IGRP. Plaintiff does not contest that his grievance was untimely, and indeed, appears to concede it. *See* Lichterman Decl. Ex. A. 108:4-8, ECF No. 46. The IGRP explicitly mandates that a grievance "must" be filed within "ten business days from the date of the alleged condition or issue." IGRP § IV(D)(1). Here, the incident occurred on January 14, 2015, while the grievance was not submitted until July 29, 2015.[4] Although this alone could be a basis for finding that Plaintiff failed to exhaust administrative remedies, *see Woodford*, 548 U.S. at 102, it is not clear from the record that the Inmate Grievance Resolution Committee denied relief on such procedural grounds, *see Howard v. Bhatti*, No. 08-CV-2645 (NGG) (LB), 2010 WL 5067574, at *4 (E.D.N.Y. Dec. 6, 2010) (inmate had not failed to exhaust administrative remedies despite submitting his grievance late because prison authorities accepted the grievance and provided a response addressing the merits).

---

[4] The ten-day window is tolled if the issue is "ongoing." *See* IGRP § IV(D)(1)(a). But the rules specify that in such a scenario the inmate must allege that the aggrieved situation is ongoing, *see id.*, which Plaintiff failed to do. Plaintiff also failed to request an extension of the ten-day period to file his grievance. *See id.* § IV(D)(9)(a). In any event, even if Plaintiff had requested additional time, he lacked good cause for an extension. Although not necessarily an exhaustive list, the IGRP provides examples of instances in which an extension would be warranted, none of which Plaintiff asserts were applicable. *See id.* ("Valid reasons for a delay may relate to an inmate's medical condition, transfer to another facility, transfer to punitive or administrative segregation, hospital wards, mental observation units, or other special population housing areas where the inmate cannot directly access a grievance and request box or the IGRP office, and court appearance. The IGRP staff shall complete the Time Limit Extension Form (Form 7114R, Attachment F) to document the extension.").

In any event, Plaintiff further claims that he did not receive a response to his grievance and that there has been "no disposition" as to the underlying dispute. *See* Lichterman Decl. Ex. A. 108:17, ECF No. 46. Significantly, the IGRP provides for an appeal process both when an inmate disagrees with the informal resolution proposed by IGRP staff, *see* IGRP § IV(G)(5)(b), and when an inmate does not receive a timely response to his grievance, *see id.* § IV(D)(10)(a). It is well-established that, even if an inmate does not receive a response to his grievance, he fails to exhaust administrative remedies if he does not avail himself of the available appeals process. *See Martinez v. Schriro*, 14-CV-3965 (KMW) (RLE), 2017 WL 87049, at *2 (S.D.N.Y. Jan. 9, 2017); *see also Tyler v. Argo*, No. 14-CV-2049 (CM) (DCF), 2014 WL 5374248, at *4 (S.D.N.Y. Oct. 10, 2014). Here, Plaintiff admits that there was "no disposition" of his grievance because he did not receive an answer. Lichterman Decl. Ex. A. 108:17, ECF No. 46. Indeed, Plaintiff even testified that he filed this suit precisely because he never received such a response. *See id.* 108:6-8.[5]

Plaintiff's failure to exhaust is confirmed by the Amended Complaint, in which, in response to the question prompting him as to what steps, if any, he took to appeal the grievance decision, he states that he merely complained to a physician about his injuries. *See* Am. Compl. § IV(E)(3). Courts in this District have regularly granted summary judgment to defendants by relying upon an inmate's complaint to conclude that he either did not initiate or complete the administrative appeals process. *See Powell v. Schriro*, No. 14-CV-6207 (KPF), 2015 WL 7017516, at *7 (S.D.N.Y. Nov. 12, 2015) (granting summary judgment where it was "further confirmed" that plaintiff failed to exhaust administrative remedies on the basis of his failure to respond in his Complaint to questions

---

[5] At one point in his deposition, Plaintiff seemed to contradict himself when he stated that "[t]hey answered the grievance but they never moved forward." Lichterman Decl. Ex. A 108:10-11, ECF No. 46. This statement, however, is so at odds with his deposition testimony immediately prior and after—as well as with the Amended Complaint—that it does not create a genuine dispute of material fact which precludes summary judgment. *Cf. Murray v. UBS Sec., LLC*, No.14-CV-927 (KPF), 2018 WL 1498051, at *12 (S.D.N.Y. April 25, 2017).

prompting what steps, if any, he had taken to appeal the decision as to his grievance); *see also Bolton v. City of New York,* No. 13-CV-5749 (RJS), 2015 WL 1254769, at *2-3 (S.D.N.Y. Mar. 18, 2015); *Timmons v.. Schriro,* No. 14-CV- 6606 (RJS), 2015 WL 3901637, at *3 (S.D.N.Y. June 23, 2015). Plaintiff's failure to initiate or complete the administrative appeals process thus functions as a barrier to his ability to bring suit in federal court.

## C. Plaintiff's Inconsistent Statements Do Not Defeat Defendants' Motion for Summary Judgment.

In an attempt to survive the summary judgment stage, Plaintiff makes various inconsistent statements in his submissions to the Court. His efforts are unavailing for a number of reasons. First, Plaintiff failed to provide a responsive 56.1 statement despite receiving the requisite notice, *see* Dkt. 47, 49, which "permits the court to conclude that the facts asserted in [Defendants' 56.1] statement are uncontested and admissible," *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009); *see also Chitoiu v. UNUM Provident Corp.*, No.05-CV-8119 (LAP), 2007 WL 1988406, at *1 n.1 (S.D.N.Y. July 6, 2007). Moreover, none of the various inconsistent allegations set forth by Plaintiff in those submissions to the Court are supported by admissible evidence. *See Jeffreys v. City of New York,* 426 F.3d 549, 554 (2d Cir. 2005) ("At the summary judgment stage, a nonmoving party 'must offer some hard evidence showing that its version of the events is not wholly fanciful.'" (quoting *D'Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir. 1998))). Finally, even overlooking these flaws, Defendants would still be entitled to summary judgment on the basis that Plaintiff failed to exhaust administrative remedies.

In his papers opposing Defendants' motion for summary judgment, for instance, Plaintiff for the first time claims that he requested a hearing before the grievance committee and was told that no such committee existed at RDNC. But even if Plaintiff here requested a hearing and did not receive a response, he was still obligated to appeal to the next step of the IGRP. As noted

8

earlier, pursuant to Section § IV(D)(10)(a) of the IGRP, an inmate is not excused for failing to exhaust administrative remedies merely because he does not receive a response to his grievance, an obligation which extends to every step of the IGRP process and thus requires an inmate who does not receive a response to his hearing request to appeal to the next step of the process. *See* IGRP § IV(D)(10)(a) ("In the event that the inmate does not receive a timely disposition at any stage of the IGRP process, the inmate may submit a request for an appeal . . . ."); *cf. Argo*, 2014 WL 5374248, at *4 (finding that, pursuant to IGRP § IV(D)(10)(a), an inmate had not exhausted administrative remedies because he failed to request a hearing before the Inmate Grievance Resolution Committee after not receiving a response to his grievance).

Plaintiff also asserts in his Amended Complaint that he "appealed to the Board of Corrections [*sic*] as he continues to suffer from the permanent injury." Am. Compl. ¶ 3(B), ECF No. 8. This statement, however, contradicts the portion of the Amended Complaint in which, in response to a question specifically asking what steps, if any, he took to appeal the grievance decision, Plaintiff asserts that he complained to a physician of his injuries. *See id.* ¶ 4(E)(3). The Board of Correction, moreover, is not an entity to which an appeal is available under the IGRP, although members of the Board are permitted to exercise their discretion to provide "advice and review" of appeals taken to the Central Office Review Committee, which is the final entity with which an appeal may be filed. *See* IGRP ¶ 4(J) (specifying that the Board of Correction is "afforded five business days in which to offer any opinion or advice it may wish with regard to the proper resolution of the appeal of the grievance or request" before the Central Office Review Committee issues a "final decision"). In any event, even if Plaintiff "appealed to the Board of Correction[]," the record is bereft of any evidence that he completed the many other steps preceding the "advice and review" of the Board, including filing an appeal with the Central Office

Review Committee, as he is required to do prior to bringing suit in federal court. Plaintiff's claim is also belied by the absence of any indication as to how the Board of Correction advised—and the Committee ruled—with respect to his grievance. The Court's decision to not credit Plaintiff's allegation is further buttressed by his explicit acknowledgement in his opposition papers that he did not know the steps for complying with the IGRP, *see* Pl. Opp. 3, ECF No. 50 ("I didn't no [*sic*] about any grievance that we must do, excuse me for not knowing the steps."), which does not excuse his failure to exhaust administrative remedies, *see Argo*, 2014 WL 5374248, at *5.

These various inconsistent statements, therefore, do not create a genuine dispute of material fact that precludes the Court from granting Defendants summary judgment on exhaustion grounds. Indeed, it is clear from the record that Plaintiff failed to exhaust administrative remedies, as he is required to do prior to bringing suit in federal court.

### D. None of the Exceptions to Exhaustion Apply.

Despite failing to exhaust administrative remedies, a plaintiff may still bring suit in federal court if he demonstrates that one of the exceptions to exhaustion apply. There are "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief" and thus excuses a plaintiff's failure to exhaust administrative remedies. *Ross*, 136 S. Ct. at 1859. First, an "administrative procedure is unavailable when . . . it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* Third, an administrative remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860. Although these three circumstances "do not appear to be exhaustive," *Williams v. Priatno*, 829 F.3d 118, 123 n.2

(2d Cir. 2016), they do "guide the Court's inquiry," *Khudan v. Lee*, No. 12-CV-8147 (RJS), 2016 WL 4735364, at *5 (S.D.N.Y. Sept. 8, 2016).

The Court does not discern any basis for finding that the administrative remedies provided in the IGRP were in fact unavailable to Plaintiff. At his deposition, Plaintiff testified generally about his belief that RNDC and the subsequent facility where he was housed, OBCC, do not maintain Inmate Grievance Resolution Committees, in flagrant violation of the IGRP. *See* Lichterman Decl. Ex. A. 108:21-109:1, ECF No. 46. But in addition to being contrary both to the terms of the IGRP, *see* IGRP §§ II(A), III, and the facts adduced by other courts, *see Mena v. City of New York*, No. 12-CV-0028 (CM), 2014 WL 2968513, at *1, 8 (S.D.N.Y. June 27, 2014), these vague and unsubstantiated allegations—particularly when aimed at multiple facilities under the purview of DOC—do not support a finding that one of the exhaustion exceptions applies here. This is particularly true because Plaintiff never testified at his deposition that he actually submitted his request for a hearing and had been told that such recourse was unavailable. *Cf. Ross*, 136 S. Ct. at 1859 (administrative remedies unavailable "[w]hen the facts on the ground demonstrate that no such potential [for any relief] exists"). As noted earlier, Plaintiff also asserts for the first time in his opposition papers that he requested a hearing before the grievance committee.[6] He cannot, however, manufacture an issue of material fact by baldly asserting facts which are at odds with his own deposition testimony. *See Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("factual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment

---

[6] He further claims that he was told that no such committee existed at RDNC.

11

and that affidavit contradicts [his] own prior deposition testimony").[7] Accordingly, Plaintiff's failure to exhaust administrative remedies precludes him from bringing suit in federal court.

## II. Even if Plaintiff Exhausted Administrative Remedies, No Reasonable Jury Could Conclude That the Deprivation of Care was Sufficiently Serious.

Plaintiff appears to assert a claim of deliberate indifference to his medical needs. Because Plaintiff was a pretrial detainee of the City during the events giving rise to his claims, his allegations are assessed under the Due Process Clause of the Fourteenth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 21 n.3, 29 (2d Cir. 2017). Deliberate indifference claims of pretrial detainees are not assessed under the Eighth Amendment because such detainees "have not been convicted of a crime and thus may not be punished in any manner—neither cruelly nor otherwise." *Id.* at 29 (citation and internal quotation marks omitted). To make out a valid deliberate indifference claim under the Due Process Clause, a plaintiff must satisfy a two-prong test. *See id.* First, the deprivation of medical care must have been "sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (citation and internal quotation marks omitted). Second, the defendant must have acted or failed to act with "a sufficiently culpable state of mind," which, "in prison conditions cases" is "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Under the Fourteenth Amendment, deliberate indifference is measured from an objective perspective. *Darnell*, 849 F.3d at 35. Because the Court concludes that no reasonable jury could find that the deprivation of care was sufficiently serious, the Court need not consider the second prong.

---

[7] Furthermore, as already discussed, Defendants' Rule 56.1 statement indicates that Plaintiff did not request a hearing, which the Court may accept as uncontested, *see T.Y.*, 584 F.3d at 418, because Plaintiff did not submit a 56.1 response despite being aware of the consequences of failing to do so, *see* Dkt. 47, 49.

To determine whether an alleged deprivation of medical care is "sufficiently serious," a court is required to first assess whether the medical care was inadequate and, if so, "to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin*, 467 F.3d at 279-80 (citing *Helling v. McKinney*, 509 U.S. 25, 32–33 (1993)). "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). A court's inquiry, therefore, "must be tailored to the specific circumstances of each case." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003). Ultimately, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker*, 717 F.3d at 125. Indeed, the deliberate indifference standard "contemplates a condition of urgency that may result in degeneration or extreme pain." *Chance*, 143 F.3d at 702 (citation and internal quotation marks omitted).

This inquiry differs depending on whether the plaintiff alleges a complete denial of medical care or, as here, merely alleges a delay in or disruption of treatment. *See Smith*, 316 F.3d at 185-86. "[I]f the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." *Salahuddin*, 467 F.3d at 280. Indeed, "[t]here is no need to distinguish between a prisoner's underlying 'serious medical condition' and the circumstances of his 'serious medical need' when the prisoner alleges that prison officials have failed to provide general treatment for his medical condition." *Smith*, 316 F.3d at 185-86. If, however, the inmate alleges "a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay or interruption* in treatment rather than the prisoner's *underlying medical*

*condition* alone in analyzing whether the alleged deprivation" is sufficiently serious. *Id.* (emphasis in original).

Although the deprivation of care inquiry is context-specific, the Second Circuit has set forth a non-exhaustive list of relevant considerations. *See Brock*, 315 F.3d at 162. Beginning with the question of whether a plaintiff suffers from a "serious medical condition," the following factors are also germane to the analysis: "(1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment, (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." *Id.* (citation and internal quotation marks omitted).

Here, it is clear that the deprivation of care was not sufficiently serious. Plaintiff claims that he accidentally struck his head on the frame of his bed "causing bruising and a hematoma which remains to the present obstructing his vision and causing his continued headache, backaches and neckaches." Am Compl. ¶ 3(B). Even assuming that Plaintiff sought medical attention immediately and was denied that opportunity because the facility was on lockdown, *see* Am. Compl. at ¶3(B),[8] he was seen at the jail's clinic two days later and was provided care that he does not appear to allege was inadequate, *see* Def. 56.1 ¶ 13. Furthermore, after the initial medical visit he was seen by various specialists for continuing pain. Def. 56.1 ¶¶ 16, 19-21. Particularly in light of the focus in this context on the specific impact of the delay in treatment, Plaintiff cannot satisfy the seriousness prong of the deliberate indifference standard. Plaintiff does not appear to

---

[8] As noted previously, Plaintiff's failure to submit a responsive 56.1 statement allows the Court to construe as uncontested and admissible the substance of Defendants' 56.1 statement, *see T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009), which, relying upon Plaintiff's own deposition testimony, asserts that Plaintiff did not seek medical attention on the evening he struck his head and received treatment immediately following his initial request two days later, *see* Def. 56.1 ¶ 6.

allege that any additional harm was caused as a result of the delay in treatment, nor does he appear to allege that the treatment he has received since the two-day lapse has been inadequate.

It is well-established, moreover, that headaches, even serious ones coupled with other symptoms, rarely rise to the level of a sufficiently serious injury. *Watts v. N.Y.C. Police Dep't*, 100 F. Supp. 3d 314, 328 (S.D.N.Y. 2015); *Sledge v. Bernstein*, No. 11-CV-7450 (PKC) (HBP), 2012 WL 4761582, at *5 (S.D.N.Y. Aug. 2, 2012) (collecting cases); *Qader v. New York*, 396 F. Supp. 2d 466, 470 (S.D.N.Y. 2005) (finding that the "plaintiff's dizziness and 'terrible headache' do not satisfy the objective component"). The Court thus concludes that Plaintiff's headache—if coupled with hematoma and pain he purportedly felt in his back and neck—did not create an urgent medical situation during the two days he alleges he had to wait for treatment.[9] If Plaintiff exhausted administrative remedies, therefore, Defendants would still be entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted. The Clerk of Court is respectfully directed to terminate the motion pending at docket entry forty-four, close the case, and mail a copy of this Order to Plaintiff.

SO ORDERED.

Dated: January 26, 2018
New York, New York

Ronnie Abrams
United States District Judge

---

[9] Plaintiff appears not to have experienced pain in his knees or blurred vision until several months after the incident. *Compare* Def. 56.1 ¶ 18 *with* Am. Compl. ¶ 3(B).